1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   STEVEN R. WELK
4  California Bar No. 149883
   Assistant United States Attorney
5  Chief, Asset Forfeiture Section
        Federal Courthouse, 14th Floor
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone: (213) 894-6166
        Facsimile: (213) 894-7177
8       E-mail: Steven.Welk@usdoj.gov

9  Attorneys for Defendants
   United States of America and
10 Eric Holder, in his capacity as
   United States Attorney General

11
                    UNITED STATES DISTRICT COURT
12
                FOR THE CENTRAL DISTRICT OF CALIFORNIA
13
                           WESTERN DIVISION
14
15  YOHANES HAILE BEYENE, an         )   No. CV 11-4445 R (MANx)
    individual, and TSEGE AYELE, an  )
    individual,                      )
16                                   )
                 Plaintiffs,         )   **FINDINGS OF FACTS AND**
17                                   )   **CONCLUSIONS OF LAW**
          v.                         )
18                                   )
    UNITED STATES OF AMERICA, and    )
19  ERIC HOLDER, in his official     )
    capacity as United States Attorney )
20  General,                         )
                                     )
21              Defendants.          )
                                     )
22

23        Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56-1

24  of the Local Rules of the Central District of California, the Court issues its

25  Findings of Facts and Conclusions of Law relating to the granting of the

26  defendants' motion for summary judgment.

27

28

# I.

# FINDINGS OF FACT

1. On May 6, 2010, Immigration and Customs Enforcement ("ICE") agents took custody of $1,340,439.55 that had been seized by the California Highway Patrol ("CHP") from plaintiff Yohanes Haile Beyene, on the ground that it was subject to federal forfeiture pursuant to 31 U.S.C. § 5317 for violation of 31 U.S.C. § 5316 (the "Beyene funds"). U.S. Customs and Border Protection ("CBP") assigned case No. 2010-2704-000886/wb to the Beyene funds. CBP sent a timely notice to Beyene on July 2, 2010 advising of the commencement of federal administrative forfeiture proceedings against the Beyene funds.

2. On or about July 22, 2010, Beyene filed a timely administrative claim to the Beyene funds, and the matter was thereafter referred by CBP to the USAO for consideration of judicial forfeiture proceedings. The government's deadline to file a complaint against the Beyene funds -- based on the filing of the administrative claim -- was October 20, 2010.

3. On May 17, 2010, the United States Secret Service ("USSS") took custody of the following-listed assets that had been seized by CHP from plaintiff Tsege Ayele:

   a) $73,000 in U.S. currency;

   b) a total of $190,671.86 in funds from various Bank of America accounts;

   c) a total of $16,158.60 in funds from various Wells Fargo Bank accounts;

   d) a total of $130,235.56 in funds from various J.P. Morgan Chase bank accounts; and

   e) one 2009 BMW X5, VIN 5UXFE43529L273302 (collectively, the "Ayele property").

4. The USSS took custody of the Ayele property for purposes of instituting federal administrative forfeiture proceedings against the property. The USSS sent a timely notice of the commencement of administrative forfeiture proceedings to

Ayele on July 15, 2010. The Ayele property was assigned USSS Case No. 403-777-172512-S and Seizure Nos. 403-2010-02010211022/023.

5. On or about July 29, 2010, Ayele filed timely administrative claims with the USSS for the Ayele property. On or about August 9, 2010, the USSS advised Ayele that the matter was being referred to the USAO for consideration of judicial forfeiture proceedings. The government's deadline to file a complaint against the Ayele property -- based on the filing of the administrative claims -- was October 27, 2010.

6. On October 20, 2010, the USAO filed an application under seal to extend for a period of sixty days the government's deadlines to commence civil judicial forfeiture proceedings against the Beyene funds and Ayele property. The application was filed under Criminal Misc No. 10-00301. That application was granted on October 20, 2010. The extended deadline applicable to the Beyene funds and the Ayele property was December 27, 2010.

7. On December 16, 2010, the government filed an application under seal for an additional extension of the filing deadlines for the Beyene funds and Ayele property. That application was granted on December 20, 2010, extending the deadlines to February 28, 2011 for both the Beyene funds and the Ayele property.

8. On February 28, 2011, the government filed an application under seal for an additional extension of the filing deadlines for the Beyene funds and Ayele property. That application was granted on March 1, 2011, extending the deadlines to April 29, 2011 for both the Beyene funds and Ayele property.

9. On April 28, 2011, the USAO advised CBP and the USSS that it had decided that it would not commence judicial forfeiture proceedings against the Beyene funds or Ayele property and, further, that the USAO had been informed by California state authorities that the assets would be sought for state forfeiture/restitution in connection with a state criminal prosecution.

10. The letter to the agencies further advised that the USAO had been served with California state court seizure orders instructing CBP and the USSS to turn over the Beyene funds and Ayele property to state authorities, and instructing the agencies to comply with the state court orders.

11. The letters were mailed by certified mail to Mary E. Cupp, Associate Chief Counsel, CBP, Attn: James E. Dochterman (with respect to the Beyen funds); and to Ronald R. Perea, Special Agent in Charge, USSS, in Los Angeles, California (with respect to the Ayele property).

12. On May 4, 2011, the USAO sent a letter by certified mail to Mr. Honig advising that on April 26 and 27, 2011, the Los Angeles District Attorney's Office ("LADA") had served the USAO with California state court Seizure Orders directing CBP and the USSS to surrender possession of the Beyene funds and the Ayele property to the California Highway Patrol and the LADA, respectively, for criminal forfeiture/restitution proceedings in state court.

13. The letter further advised that the government intended to comply with the seizure orders and that it would not be seeking judicial forfeiture of the Beyene funds or the Ayele property under federal law. Finally, the May 4 letter provided contact information for the person at the LADA responsible for the state proceedings involving the assets and urged Mr. Honig to contact the LADA with any questions concerning the assets.

14. CBP initiated the transfer of the Beyene funds to the California Highway Patrol pursuant to the USAO's instructions and the applicable state court seizure order on May 9, 2011. The transfer was completed on May 27, 2011.

15. The Ayele property was released by the USSS to the LADA in accordance with the USAO's instructions and the state court seizure order.

15. Plaintiffs Yohanes Halie Beyene and Tsege Damtel Ayele are currently defendants in two pending California state court criminal prosecutions: the first (case no. BA378049) was initiated on or about November 17, 2010; the second

(case no. BA385903) was initiated on or about July 1, 2011. Both state actions involve the property at issue in this action. Both include allegations pursuant to California Penal Code section 186.11, known as the "California Freeze and Seize Statute." Plaintiffs, through counsel, have made formal efforts in the above-referenced state court actions to obtain a court order requiring California state authorities to return the seized property to them. Those efforts were rejected by the state court responsible for the pending cases. Further, the state court (the Honorable Judge Rehm) has entered order authorizing state authorities to retain possession of the subject property in connection with the ongoing state court criminal proceedings. The plaintiffs were provided with notice of the state's efforts to obtain those orders and were given an opportunity to oppose the requests.

## II
## CONCLUSIONS OF LAW

1. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

2. The moving party has the initial burden of demonstrating that there is no genuine issue of material fact for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

3. The burden may be satisfied by pointing out the absence of evidence to support the non-movant's claims. Celotex, 477 U.S. at 322.

4. In deciding whether the movant has met the burden, the court must view the evidence and factual inferences in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

1    5.    The non-movant then bears the burden of establishing the existence of elements essential to its case, which it would have to prove at trial. Celotex, 477 U.S. at 322.

6.    If no rational fact-finder could find in the non-movant's favor, there is no genuine issue of material fact and summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); Matsushita Elec., 475 U.S. at 587.

7.    While plaintiffs purport to state three separate causes of action in their complaint, the relief they seek is limited to the return of the Beyene funds and the Ayele property, which were taken into federal custody for purposes of federal forfeiture proceedings, but subsequently turned over to California state authorities pursuant to California state court process. Their claim is one in equity that arises more accurately under Rule 41(g) of the Federal Rules of Criminal Procedure. Their claim fails because (1) the government cannot be ordered to return property which it does not possess; (2) plaintiffs have failed to identify a waiver of sovereign immunity that will allow the prosecution of this action against the government; and (3) plaintiffs have a remedy at law available to them in state court, where the property now resides.

8.    Because the assets at issue are no longer in federal custody, and that custody was lawfully divested, plaintiffs cannot prevail here as a matter of law. It is undisputed that the government released the property to state officials pursuant to California state court seizure orders. It therefore cannot (nor can it be ordered to) "return" the property to plaintiffs. See In re Grand Jury Investigation Concerning Solid State Devices, Inc., 130 F.3d 853, 856 (9th Cir. 1997) ("A Rule 41(e) motion therefore should be granted . . . , if the seizure was lawful, when the movant is aggrieved by the government's continued possession of the seized property.") (emphasis added); Mora v. United States, 955 F.2d 156, 161 (2d Cir. 1992) (district court can order the return of property only if it is in government

possession); <u>Lowrie v. United States</u>, 824 F.2d 827, 829 (10th Cir. 1987) (overturning an order that the FBI return copies of records which had been inadvertently destroyed, and noting that "an order that the F.B.I. return material which it does not have, nor does it have control over, cannot stand"); <u>United States v. White</u>, 718 F.2d 260, 261 (8th Cir. 1983), <u>reh. denied</u>, (government cannot be ordered to return property it does not possess).

9. This is not a case where the government destroyed or lost seized property, either intentionally or inadvertently. The government did not dispose of the property in some manner which would suggest that disgorgement is appropriate, or even possible. Since the government cannot return the property that was turned over to state authorities, the only possible relief that this Court could award would be damages in an amount equal to the value of the property the government had in its custody, but there is no legal or factual basis for such a remedy.

10. The only remedy provided in the statute governing federal civil forfeiture proceedings that has any possible application here is the provision at 18 U.S.C. § 983(a)(3)(B) that requires the government to release property under circumstances like those here and barring it from taking any further action to effect the civil forfeiture of the property at issue. But the government has already released the property pursuant to another court's order, and it is not engaged in any efforts to effect the civil forfeiture of the assets. The USAO's instructions to release the assets were given well before plaintiffs filed this case. Plaintiffs' remedy, if they have one, is in state court against the state authorities to whom the assets were released.

11. The United States is immune from suit unless Congress has expressly and unequivocally waived this immunity. <u>Gilbert v. DaGrossa</u>, 756 F.2d 1455, 1458 (9th Cir. 1985)(citations omitted). If sovereign immunity has not been waived, the court lacks subject matter jurisdiction over the claim. <u>McCarthy v.</u>

7

U.S., 850 F.2d 558, 560 (9th Cir. 1988). The fact that plaintiffs' complaint names as defendants a government official in his official capacity (in addition to the United States) does not change the fact that the action is against the sovereign, and does not avoid the bar of sovereign immunity. Id.; Balser v. Department of Justice, 327 F.3d 903, 907 (9th Cir. 2003). Waivers of sovereign immunity are to be strictly construed. Tucson Airport Authority v. General Dynamics Corporation, 136 F.3d 641, 644 (9th Cir. 1998).

12. Plaintiffs' complaint arguably alleges two bases for waiver of sovereign immunity: Rule 41(g) of the Federal Rules of Criminal Procedure; and the Administrative Procedures Act ("APA"). There is no waiver of sovereign immunity in Rule 41(g). United States v. Jones, 225 F.3d 468, 470 (9th Cir. 2000). While a claim under that Rule allows a court to treat a motion for return of property as a complaint for equitable relief where there is no pending related criminal prosecution, it cannot support a claim for monetary damages.

13. Nor can the APA support what is essentially a claim for damages against the government where the undisputed facts demonstrate not only that there was no actionable conduct, but that the relief sought is available to plaintiffs in another court where jurisdiction is proper.

14. Where Congress has established a framework for adequate judicial review of the conduct of which plaintiffs complain, the APA does not permit an action. If there is an adequate remedy for plaintiffs' claims available elsewhere, the APA does not waive sovereign immunity for an action against the United States. Tucson Airport Authority, 136 F.3d at 645.

15. The only statutory framework applicable to the facts here are the provisions in 18 U.S.C. § 983 relating to what the government is required to do following the submission of a claim in administrative forfeiture proceedings. Those provisions require that where the government fails to take certain steps within 90 days of the submission of such a claim (including obtaining extensions

of time from the court), it must "release" the property and take no further steps to forfeit the property under federal law.

16. The term "release" allows the government either to return the property to the person from whom it was seized or release it to some other party under appropriate circumstances. This includes turning over the property to another sovereign, mimicking (in its effect) the provision in 18 U.S.C. § 981(e)(7) that allows the government to discontinue federal civil judicial forfeiture proceedings in favor of state proceedings.[1] The turnover provision of § 981(e)(7) not only allows the government to abandon federal forfeiture proceedings and turn property over at its sole discretion, it explicitly exempts the government from liability in any action arising out of the seizure, detention or transfer of the property to state authorities. While the provisions of § 983(a)(3)(B) do not include the detail of § 981(e)(7), the two provisions are consistent because each contemplates the federal government foregoing federal forfeiture proceedings in favor of state (or local) proceedings.

16. The government complied with the provisions of § 983 here, divesting itself of custody of the property and releasing it to the appropriate authorities in obedience to two court-issued seizure orders. Moreover, it provided notice to plaintiff's counsel of what it had done with the assets and provided contact

---

[1] The pertinent language of § 981(e)(7) is:

After the filing of a complaint for forfeiture under this section, the Attorney General may seek dismissal of the complaint in favor of forfeiture proceedings under State or local law. Whenever forfeiture proceedings are discontinued in favor of State or local proceedings, the United States may transfer custody and possession of the seized property to the appropriate State or local official immediately upon the initiation of the proper actions by such officials. Whenever forfeiture proceedings are discontinued by the United States in favor of State or local proceedings, notice shall be sent to all known interested parties advising them of the discontinuance or dismissal. The United States shall not be held liable in any action arising out of the seizure detention, and transfer of seized property to State or local officials.

information for the state authority responsible for the assets.  Plaintiff has no factual or legal basis for the relief requested.

17.   Defendants are entitled to summary judgment in their favor as a matter of law.

DATED:  November 15, 2011.

_____
THE HONORABLE MANUEL L. REAL
United States District Judge

Presented by:

ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

        /S/
_____
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

Attorneys for Defendants
United States of America and
Eric Holder, in his capacity as
United States Attorney General